[No. B107631. Second Dist., Div. Four. Mar. 26, 1998.]

MARY ROITZ, Plaintiff and Respondent, v.
COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY,
Defendant and Appellant.

COUNSEL

Kimberly K. Mays, O'Connor, Schmeltzer & Rose, Kimberly I. McIntyre and Norman B. Schmeltzer III for Defendant and Appellant.

Girardi & Keese, Thomas V. Girardi, James B. Kropff and David N. Bigelow for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—Defendant Coldwell Banker Residential Brokerage Company (appellant) appeals a judgment entered after the trial court confirmed an arbitration award in favor of plaintiff Mary Roitz (respondent) and denied appellant's motion to vacate the award. We conclude that the trial court did not err and affirm the judgment.

FACTS

Respondent worked for appellant as an independent contractor. Their agreement provided that it "may be terminated by either party for any reason, at any time, and without cause. . . ." The agreement also provided for binding arbitration of disputes.

After being terminated by appellant in June 1995, respondent filed a complaint asserting 10 causes of action: breach of implied contract, breach of covenant of good faith and fair dealing, wrongful termination, sexual discrimination, slander, invasion of privacy, emotional distress (seventh and eighth causes of action), assault, and battery.

Appellant petitioned that the matter be ordered to arbitration, which was granted on November 22, 1995. Thereafter, the parties selected Peter S. Smith, a retired judge, as the arbitrator and estimated that arbitration would take two days to complete. In a letter dated June 20, 1996, the arbitrator confirmed the dates of August 19 and August 20, 1996, and forwarded to the parties an invoice for two days of hearing, payable no later than July 8, 1996, and his fee policy. Pertinent to this discussion, the fee policy provides as follows: "The retainer will be refunded if the matter is continued, taken off calendar, or otherwise disposed of and if you notify me in writing of the fact not later than twenty-one (21) days before the scheduled date, or twenty-eight (28) days before the scheduled date if the case is two (2) days or longer. If the notice is less than twenty-one (21) days or twenty-eight (28) days in cases of two (2) days or longer, the retainer will be refunded only to

the extent the time is rescheduled with another matter. [¶] If the continuance was caused by factors beyond the control of the party or attorney, an exception may be made to the above policy."

Eleven and seven days prior to the arbitration, respectively, appellant subpoenaed respondent's treating physician, Dr. Leo Goldberg, and respondent's psychiatrist, Dr. Michael Zona, for appearance at the arbitration. In response, on August 13 and 14, respectively, each doctor contacted appellant's counsel and advised that he could not comply with the subpoenas because each had a prepaid vacation scheduled. On August 14, appellant's counsel telephoned respondent's counsel and suggested utilizing the dates as scheduled and completing the arbitration at a later date or continuing the arbitration in its entirety. Respondent's counsel advised that while he was ready to proceed on the dates scheduled, he identified agreeable alternative arbitration dates in November. Appellant's counsel called the office of the arbitrator and informed his secretary that the two doctors could not appear as scheduled and that the parties had agreed to continue the arbitration and would not be appearing on the scheduled dates.

The next day, respondent's counsel telephoned and advised appellant's counsel that the arbitrator was demanding his entire fee for the dates of August 19 and August 20. Appellant's counsel telephoned the arbitrator's office and the arbitrator's secretary said the arbitrator would make no exception to his fee policy and expected to either retain the fees paid or proceed on August 19 and August 20.

On Friday, August 16, 1996, appellant's counsel sent by facsimile and by mail a letter withdrawing appellant's consent to have Judge Smith act as the arbitrator. In response, appellant's counsel received a telephone message indicating that the arbitrator intended to proceed on the days reserved. Appellant's counsel faxed another letter to the arbitrator explaining she would appear with a court reporter at the August 19 hearing ". . . to make a record that we will not go forward with the arbitration because you have denied my client due process by refusing to allow me to put on all of my witnesses thereby not allowing me to complete the arbitration and further that based on this we have withdrawn our consent to allow you to act as arbitrator in this matter because you have made it clear that you cannot act in a fair and impartial manner."

When the hearing began on August 19, the arbitrator commented: "when I read the briefs, I really didn't think having these people in here [the two treating doctors] were going to make that much difference." After appellant's counsel stated that she could not agree "to continue with what

transpired," the arbitrator replied: "You cannot unilaterally withdraw from an arbitration like that because you don't like some ruling. That is absolutely poppycock, and that is absolutely no basis. You are over 21, and if you want to take a walk or something like that and enter a default, that, to me, it is crazy, and I think we ought to proceed with this thing." He also suggested that she speak with appellant's general counsel before taking such a drastic position. Counsel responded that if the matter were to proceed she would have to move to set the arbitration award aside. The arbitrator responded: "I told you to come in and put on your case, and I'm also telling you that I'm willing to sit here and look at [the doctors'] records, *and I suppose if I think their testimony is that critical, and I have to have them come in at a later date, I will listen to their testimony.* [¶] I don't think you understand this, but I have listened to hundreds of doctors in my life, and I don't—frankly, I didn't think based on what I read in the briefs that it is necessary to have live appearances here. [¶] I could be wrong, and if it turns out for the decision-maker that I do, you can go ahead and do what you want." (Italics added.)

Appellant's counsel's reiterated her refusal to consent to the hearing. Respondent's counsel stated that it appeared the matter would proceed as a default hearing, to which appellant's counsel replied, "Correct." The arbitrator responded: "Okay. I have indicated that—I think you are insane to do this, quite frankly. Because I think in reading over the briefs, that there are a lot of issues talked on by both sides. You can't tell until you hear the witnesses, but this isn't a slam, dunk case for anybody. If you are making that decision, you are over 21 years old, and I'm not going to stop you from doing it."

After further discussion, the arbitrator said he would proceed with the hearing. Counsel for appellant then departed, and the matter proceeded as a default. An award of $260,000 was rendered in favor of respondent on August 20, 1996.

Respondent petitioned to confirm the award and for entry of judgment. In response, appellant petitioned to vacate the arbitration award. Counsel's declaration in support of the petition concluded: "At all times, I was prepared and willing to proceed with the arbitration in this case and am still willing to proceed immediately before a neutral arbitrator to be appointed by the court. I sincerely believed and still believe that based upon the statements, attitude, obvious bias and conduct of the arbitrator, Petitioner COLD-WELL BANKER would not have received a fair and impartial hearing in this case and felt an ethical obligation to my client not to proceed with an arbitration that would have resulted in an unjust and biased arbitration award."

The trial court denied the motion to vacate the award, granted the petition to confirm the award, and judgment was entered.[1]

## DISCUSSION

■ The issue here is whether the trial court erred in confirming the arbitration award and in denying appellant's motion to vacate it.

■ Generally, an arbitrator's decision is not reviewable for error. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 13 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Absent proof of one of the grounds for vacating an arbitration award listed in Code of Civil Procedure section 1286.2 (all statutory references are to this code), ". . . a court may not vacate an award, even if the arbitrator commits legal or factual errors which appear on the face of the award and which cause substantial injustice. [Citation.]" (*Creative Plastering, Inc.* v. *Hedley Builders, Inc.* (1993) 19 Cal.App.4th 1662, 1665 [24 Cal.Rptr.2d 216], citing *Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at pp. 10-13, 26-28.)

■ Appellant acknowledges the foregoing authority and does not directly attack the award, but instead contends that the award is invalid because the arbitrator was biased within the meaning of section 1286.2, subdivision (f).[2] In a related argument, appellant asserts that the failure of the arbitrator to continue the hearing further demonstrates his bias.

Former subdivisions (e) and (f) of section 1286.2 provided for vacation of the arbitration award as follows:

"Subject to section 1286.4,[3] the court shall vacate the award if the court determines any of the following:

". . . . . . . . . . . . . . . . . . . .

"(e) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing *upon sufficient cause being shown*

---

[1]Apparently there were some procedural irregularities in the trial court regarding which department should hear and rule on these two matters. Appellant raises no argument in its briefing on the issue and therefore has waived any error in that regard. (*Tiernan* v. *Trustees of Cal. State Universities & Colleges* (1982) 33 Cal.3d 211, 217 [188 Cal.Rptr. 115, 655 P.2d 317].)

[2]Nonetheless, appellant asks us to review the substantive nature of the claim, urging that the result was "egregious," and that such asserted fact further implies that the arbitrator was biased.

[3]Not applicable here.

*therefor* or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.

"(f) An arbitrator making the award was subject to disqualification upon the grounds specified in subdivision (e) of Section 1282, but failed upon receipt of timely demand to disqualify himself or herself as required by those provisions." (Italics added.)

Section 1282, former subdivision (e) provided: "An arbitrator shall disqualify himself or herself, upon demand of any party to the arbitration agreement made before the conclusion of the arbitration proceedings, on any of the grounds specified in Section 170.1 for disqualification of a judge."

Appellant argues that section 170.1, subdivision (a)(6)(C) is the relevant standard under which the arbitrator should have disqualified himself. That section states as follows:

"(a) A judge shall be disqualified if any one or more of the following is true:

". . . . . . . . . . . . . . . . . . . . . . . .

"(6) For any reason . . . (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification."

The standard for disqualification under subdivision (a)(6)(C) of section 170.1 is objective. (*Flier* v. *Superior Court* (1994) 23 Cal.App.4th 165, 170 [28 Cal.Rptr.2d 383].) Thus, an award may be vacated if ". . . the record reveals facts which might create an impression of possible bias in the eyes of the hypothetical, reasonable person. [Citation.]" (*Ceriale* v. *AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 504 [55 Cal.Rptr.2d 685].) Actual bias is not required. (*Flier* v. *Superior Court, supra*, 23 Cal.App.4th at p. 170.) "Where the average person could well entertain doubt whether the [adjudicator] was impartial, appellate courts are not required to speculate whether the bias was actual or merely apparent, or whether the result would have been the same if the evidence had been impartially considered and the matter dispassionately decided [citations], but should reverse the judgment and remand the matter to a different [adjudicator] for a new [hearing] on all issues. [Citation.]" (*Catchpole* v. *Brannon* (1995) 36 Cal.App.4th 237, 247 [42 Cal.Rptr.2d 440], fn. omitted.)

■ When reviewing a charge of bias, ". . . the litigants' necessarily partisan views should not provide the applicable frame of reference. [Citations.]" (*United Farm Workers of America* v. *Superior Court* (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4].) Potential bias and prejudice must clearly be established (*Gray* v. *City of Gustine* (1990) 224 Cal.App.3d 621, 632 [273 Cal.Rptr. 730]) and statutes authorizing disqualification of a judge on grounds of bias must be applied with restraint. (*McClenny* v. *Superior Court* (1964) 60 Cal.2d 677, 680 [36 Cal.Rptr. 459, 388 P.2d 691].) "Bias or prejudice consists of a 'mental attitude or disposition of the judge towards [or against] a party to the litigation. . . .' " (*Ensher, Alexander & Barsoom* v. *Ensher* (1964) 225 Cal.App.2d 318, 322 [37 Cal.Rptr. 327], quoting *Evans* v. *Superior Court* (1930) 107 Cal.App. 372, 380 [290 P. 662].) Neither strained relations between a judge and an attorney for a party nor "[e]xpressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are . . . evidence of bias or prejudice. [Citation.]" (*Jack Farenbaugh & Son* v. *Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1031 [240 Cal.Rptr. 78].)

Turning to the facts of the instant case, appellant's basic argument is that the arbitrator's refusal to continue the hearing and waive his fee for August 19 and 20 exhibited bias towards appellant, which gave rise to disqualification pursuant to section 170.1, subdivision (a)(6)(C). We disagree.

■ Turning first to the request for a continuance, appellant demonstrated no good cause for the request. In *Moore* v. *Griffith* (1942) 51 Cal.App.2d 386 [124 P.2d 900], a case cited and relied upon by both parties, the court addressed a similar fact situation and rejected an argument that a continuance should have been granted. "It does not appear that any showing was made before the arbitrators by affidavit or under oath of the materiality of any evidence expected to be given by this witness or of any diligence used to procure his attendance, nor that any request for time to prepare or present any such affidavit was made. 'A motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it.' (§ 595, Code Civ. Proc.)" (*Id.* at p. 389.)

Here, appellant made no showing why the doctors needed to be at the hearing. The arbitrator commented that he had the various medical records and could refer to them. No offer of proof was made by appellant why this was insufficient to establish the point appellant desired to make through either of these witnesses. It is common practice at arbitrations that medical records, declarations and deposition transcripts are often used as evidence in lieu of live testimony.

Next, the timeliness of the request was highly questionable. The arbitration dates of August 19 and 20 were agreed to by the parties in June 1996. On June 20, the arbitrator sent the parties his policies for continuance and refund of fees. Appellant waited until less than two weeks prior to the first arbitration date to serve subpoenas on the two doctors. There is no indication in the record of any attempt by appellant to contact the doctors to ascertain if the arbitration dates were convenient or to make any other arrangements to preserve their testimony, if necessary. Instead, appellant's counsel cavalierly assumed that with the absence of these two alleged "critical" witnesses, the arbitrator would grant a continuance.

Appellant argues that the arbitrator's refusal to honor his own written fee policy exception also demonstrates bias which resulted in his constructive refusal to hear material evidence. This argument fails for two reasons.

First and foremost, the exception to the no-refund policy does not apply here. That exception states: "If the continuance was caused by factors beyond the control of the party or attorney, an exception may be made to the above policy." What occurred here was the fault of counsel for appellant. As we have previously noted, there is no evidence that counsel took any reasonable steps to ensure that the two doctors were available to appear at the arbitration or to take steps to preserve their testimony for use at the arbitration.

Second, the record indicates that the arbitrator did not refuse to hear testimony from the two treating doctors. At the hearing, he stated "if . . . I have to have them come in at a later date, I will listen to their testimony."[4]

Appellant also argues that the arbitrator's comment to the effect that counsel was over 21 years of age and should talk to corporate counsel before walking out of the proceeding, taken in connection with the statement to the effect that he could not believe appellant could not pay his fee, exhibits bias. Again we disagree. Rather than exhibiting bias, the statement relating to the fact that appellant would not pay the fee appeared to be made out of frustration. The statement relating to counsel's age was basically a warning to counsel that unlike a minor, who can be protected from attempting to make rash decisions, an adult generally cannot be protected from impetuousness. The statements merely demonstrate that the arbitrator was piqued at counsel's inappropriate, untimely, and unilateral election not to take part in the arbitration, not bias.

---

[4]There is some inference in appellant's argument that the arbitrator would not allow sufficient time for it to present its 18 other witnesses. As with the two doctors, there is no factual support to suggest appellant could not have put on a proper case within the time set aside for the arbitration.

■    Citing the definition of the term "voluntary arbitration" contained with Black's Law Dictionary (4th ed. 1968) page 135, column 1, appellant asserts that the power of an arbitrator comes only from the consent of the parties and from this it concludes that it can unilaterally withdraw its consent and nullify the arbitration. This is incorrect. This action was initiated by respondent and it was only the arbitration clause in the employment contract which detoured the matter to arbitration. Appellant's argument demonstrates a cavalier attitude, a total lack of respect for the rights of respondent, the arbitrator, and the judicial system, and deserves no further comment.

■    At the August 19, 1996, hearing, after appellant's counsel expressed her refusal to consent to the arbitration, respondent's counsel stated that the matter should proceed "as a default hearing." Appellant's counsel replied, "Correct." Significantly, this reply is an admission from appellant's counsel that her decision not to continue with the proceeding was a knowing and calculated step which resulted in a default prove-up.

CONCLUSION

The record does not establish any objective basis to suggest that a reasonable person would conclude that Judge Smith was potentially biased against appellant or appellant's counsel. Instead, the record demonstrates a fatuous, unilateral decision to refuse to take part in the proceedings after the arbitrator found no good cause to continue the matter. Accordingly, the arbitration award was properly confirmed.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Epstein, Acting P. J., and Czuleger, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 17, 1998.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.