Filed 2/28/13  Momtaz v. OneWest Bank CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KHIDEJEH MOMTAZ et al., | B237151 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC106673) |
| v. | |
| ONEWEST BANK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Law Offices of Glenn M. Rosen and Glenn M. Rosen*;* Law Offices of Wilfred J. Killian and Wilfred J. Killian for Plaintiffs and Appellants Khidejeh Momtaz and Novin Katherine Golshani.

Allen Matkins Leck Gamble Mallory & Natsis, Andrew E. Miller and Ryan T. Waggoner for Defendant and Respondent.

_____

Plaintiffs Khidejeh Momtaz and Novin Katherine Golshani appeal judgment after a bench trial in favor of defendant OneWest Bank in plaintiffs' action for breach of contract, fraud, specific performance, and injunctive relief. Plaintiffs asserted that OneWest Bank promised them a loan modification in April 2009, but even after plaintiffs made payments pursuant to the loan modification, OneWest Bank allegedly wrongfully started foreclosure proceedings on their property. On appeal, plaintiffs assert the trial court erred in excluding evidence that: (1) plaintiffs believed the unsolicited loan modification proposal was to atone for an erroneous and damaging credit report that OneWest Bank's predecessor in interest, IndyMac Bank, made regarding plaintiffs; (2) plaintiffs received rental income on the subject property; and (3) plaintiffs were not in arrears under their loan. Plaintiffs argue that OneWest Bank was unjustly enriched by their payments under the modified plan, OneWest Bank improperly increased the amount of the loan, and OneWest Bank waived any objection to the decreased payments they made. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *Factual Background*

Plaintiffs own an apartment building at 1134 Euclid Street in Santa Monica. In January 2007, plaintiffs gave IndyMac Bank a note and trust deed in exchange for a $998,000 loan on the property.[1] The note required a $6,226.22 monthly payment.

On April 7, 2009, OneWest Bank sent a solicitation to plaintiffs, proposing a loan modification agreement for the purpose of bringing plaintiffs' loan current and reducing their monthly payments. Pursuant to the proposal, plaintiffs' payments would be reduced to $4,680.03 per month for a period of five years, and after that would increase to $5,156 per month for one year, and increase to $5,274.53 for the remainder of the loan. As a

---

[1] IndyMac Bank was placed in receivership in March 2009, and its assets were transferred to OneWest Bank by the Federal Deposit Insurance Corporation. Named defendant IndyMac Mortgage Services is the mortgage servicer for OneWest Bank. Only OneWest Bank is a party to this appeal.

result, OneWest Bank increased the balance on the loan from $975,450.26 to $996,211.58, consisting of past due payments of $20,761.32 and service costs.

Specifically, the proposal stated that "[OneWest Bank] proposes to permanently modify your mortgage, bring past due amounts current, and provide you with an affordable monthly payment. This proposed modification is based on the assumption that your estimated gross monthly income is between $13,556.48 and $18,366.84. We must verify that your gross monthly income is within this range. [¶] . . . [¶] Our offer to modify your mortgage to provide you with an affordable payment is based on whether your current gross monthly income is between the dollar range specified above. To finalize this modification, we must verify your income to confirm that you qualify. To verify your income, please sign and return the enclosed Request for Transcript of Tax Return . . . and enclose a copy of your two most recent pay stubs. If you would like us to consider other sources of income, please include that documentation, such as bank statements."

Attached to the proposal was an agreement containing the terms of the modification and which stated that, "This Agreement is not binding on [OneWest Bank] unless and until [OneWest Bank], or servicing agent, IndyMac Mortgage Services . . . , verifies that you qualify for this modification offer. You will promptly provide [OneWest Bank] acceptable information to permit verification of your income, and make the payments shown in the payment schedule . . . while [OneWest Bank][] verifies your information. If you qualify, [OneWest Bank] will sign and return this Agreement to you, and it will be effective on the date it is signed by [OneWest Bank]. [¶] . . . [¶] Except as modified by this Agreement, all terms and provisions of the Note, any Riders, and the Security Instrument remain in full force and effect."

OneWest Bank designed the loan modification proposal for borrowers who had not "reached out" to OneWest Bank and was designed to permit borrowers to remain in their home. OneWest Bank estimated a borrower's income from the loan amount because many borrowers had obtained their loans without any income documentation.

3

The proposed loan modification provided that it must be returned to OneWest Bank by April 27, 2009, with a check for $4,680.03, and a verification of income. Plaintiffs returned the signed loan modification agreement to OneWest Bank on April 27, 2009 by Federal Express. Plaintiffs sent a check for $4,680.03, the signed form granting OneWest Bank access to their tax returns, a OneWest Bank form financial statement in which they listed their income as $14,000 per month and attached a bank statement for April 2009 and a computer printed payroll statement from Pacific Paradise Realty for Golshani, who is self-employed, listing her gross income as $5,879 per month. Golshani had a real estate broker's license and originated loans. The package did not include any rental income information for the property, which was a triplex. At trial, Golshani testified that she highlighted the figures representing the amount past due and the new principal amount to draw the bank's attention to the figures because she did not believe they were correct.[2]

On June 5, 2009, OneWest Bank sent plaintiffs a letter declining their request for a loan modification based on the information submitted in plaintiffs' financial package, and advising them that OneWest Bank would continue to service their loan in accordance with the terms of the existing note. The letter did not state any specific reasons for OneWest Bank's decision. Plaintiffs contended they never received this letter, although OneWest Bank's records indicate that the bank spoke to Golshani on June 6, 2009 about the denial of the loan modification.

Plaintiffs paid OneWest Bank the reduced payment of $4,680.03 per month for the months of May, June, July, August and September 2009. Plaintiffs tendered their October 2009 payment to OneWest Bank, but OneWest Bank refused the tender, claiming the loan was in default. On September 18, 2009, OneWest Bank, through Regional Trustee Services Corporation, recorded a notice of default and commenced

---

[2] This testimony contradicted her deposition testimony, where she stated that these figures were crossed out. Golshani also testified at deposition that she sent OneWest Bank two forms—one with these figures crossed out, and the other without any alterations.

4

nonjudicial foreclosure proceedings. OneWest Bank initially scheduled the foreclosure sale for January 11, 2010, but postponed it until February 8, 2010 upon request of plaintiffs' counsel.[3]

Plaintiffs tendered the payments for the months of October, November, and December 2009 in the amount of $18,720.12 to OneWest Bank to bring the payments current through January 2010. Regional Trustee Services refused to cancel the foreclosure sale. By letter dated January 4, 2010, Regional Trustee Services informed plaintiffs that the funds sent in April and May 2009 were applied to the February 2009 payment; the June 2009 payment was applied to the March 2009 payment, and the July 2009 payment was applied to the April 2009 payment. Regional Trustee Services treated the August 2009 payment as a "suspense credit" because the funds were less than a single payment, and the $6,226.22 payment sent in October 2009 was returned. As a result, the loan was delinquent as of May 2009.

By letter dated December 22, 2009, plaintiffs inquired of OneWest Bank concerning the status of their loan modification. On December 29, 2009, OneWest Bank responded that plaintiffs' loan modification had been denied because of their failure to return the forms in a timely manner and because they failed to include proof of income documents.

In April and May 2007, OneWest Bank's predecessor IndyMac Bank had improperly credited plaintiffs' monthly mortgage payments to another account. Plaintiffs claimed that in 2007, IndyMac Bank falsely reported negative credit information to three credit agencies.

### 2. *Procedural Background*

Plaintiffs' complaint filed February 2, 2010, alleged claims for breach of contract, fraud, and sought a temporary restraining order and permanent injunction preventing the sale of the property. The operative first amended complaint filed July 16, 2010 added a claim for specific performance of the loan modification agreement.

---

[3] The record does not indicate whether the foreclosure took place.

5

On February 25, 2010, the trial court issued a temporary restraining order enjoining the foreclosure sale.[4]

The court commenced a bench trial on the specific performance claim on February 14, 2011, and found for OneWest Bank. The court stated that it found OneWest Bank was making an offer for a loan modification, the offer contained a condition that plaintiffs' income be between $13,500 per month to $18,300 per month, and plaintiffs needed to verify their income; further, plaintiffs altered the agreement when they crossed out the increased loan balance figures.

The court conducted a bench trial on the remaining claims on April 26 and 27, 2011, and found for OneWest Bank. The court specifically found that there was no evidence of fraud because OneWest Bank indicated that it would have given plaintiffs a modification if they had met the income requirements set forth in the loan modification proposal.

The court entered judgment in favor of OneWest on June 20, 2011.

## DISCUSSION

Plaintiffs contend that the trial court abused its discretion in excluding key evidence (1) that plaintiffs believed the unsolicited loan modification proposal was to atone for an erroneous and damaging credit report that IndyMac Bank made regarding plaintiffs which plaintiffs asserted would have established that they would have gone to another bank to obtain refinancing if IndyMac Bank had not damaged their credit, (2) that plaintiffs received rental income on the subject property sufficient to establish they qualified for the loan modification, and (3) that plaintiffs were not in arrears on their loan when OneWest Bank proposed the modification. Plaintiffs argue that defendant was unjustly enriched by their payments under the modified plan, improperly increased the amount of the loan, and waived any objection to the deceased payments they made.

Respondent contends plaintiffs waived their evidentiary challenges on appeal by failing to cite to the record, and in any event, the judgment should be affirmed because

---

[4] At the time of trial, the restraining order was still in effect.

the trial court did not abuse its discretion in excluding evidence.  First, the evidence concerning damage in 2008 to plaintiffs' credit was not relevant to whether a contract was formed in April 2009; second, plaintiffs concede that the trial court admitted evidence of rental income at trial, and merely argue that the court failed to accept their interpretation of the increased rental income, to wit, that it was sufficient to support a loan modification.

## I.     Standard of Review

A trial court is vested with broad discretion in ruling on the admissibility of evidence.  The court's ruling will be upset only if there is a clear showing of an abuse of discretion.  "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]'" (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431.)  Moreover, if the exclusion of evidence is proper on any theory of law applicable to the case, the exclusion must be affirmed regardless of the basis for the trial court's ruling.  (*Philip Chang & Sons Associates v. La Casa Novato* (1986) 177 Cal.App.3d 159, 173.)  Finally, "even where evidence is improperly excluded, the error is not reversible unless '"it is reasonably probable a result more favorable to the appellant would have been reached absent the error.  [Citation.]" [Citation.]'" (*Tudor Ranches, Inc.*, at pp. 1431–1432.)  We find no abuse of discretion, nor do we find that appellant was prejudiced by any ruling even if there had been error.

## II.    The Exclusion of the Preferred Evidence Was Not Prejudicial

### A.     *Factual Background*

At trial on the specific performance claim, plaintiffs also sought to introduce evidence that IndyMac Bank had damaged their credit rating, contending the evidence was relevant because they would have sought financing from another bank if IndyMac Bank had not damaged their credit.  Plaintiffs further sought to introduce evidence that they believed OneWest Bank had solicited the loan modification agreement to atone for

the damage to their credit by OneWest Bank's false negative credit report based upon misapplied funds. The court asked whether plaintiffs had received anything other than the loan modification from OneWest Bank to evidence such intent, and plaintiffs responded that they received letters in September and October 2007. After plaintiffs did not point to anything specific in the letters or the proposed loan modification documents OneWest Bank sent them showing such motivation, the court stated that, "right now we're just looking at whether or not there is an enforceable loan modification" and excluded further testimony on the subject.

At another point in the specific performance trial, the court asked plaintiffs whether, given that plaintiffs only verified Golshani's salary from Pacific Paradise Realty of $5,879 per month, how plaintiffs believed that they would qualify for a loan modification that required a monthly salary of a minimum of in excess of $13,000. Plaintiff responded that they also received rental income from the apartment building which would put their income in excess of $14,000.

Plaintiffs also sought to establish that at the time of the April 7, 2009 loan modification proposal, their loan was not in arrears. The court found the information not relevant and stated, "I don't want to be blunt about it[,] but I'll say it this way, so what? The offer was made. She could have taken us up on it. Doesn't really result in any harm here. If she can show she wasn't in arrears, then so be it. She still could have gotten a loan modification. . . . [If] in fact she wasn't behind. And if that leads to some theory of fraud, then I'm listening to it."

### B.    Analysis

Essential to contract formation is the mutual assent of the parties to the contract. Mutual assent does not "exist unless the parties 'agree upon the same thing in the same sense.'" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.) The manifestation of mutual assent is generally achieved through the process of offer and acceptance. "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their

8

words and acts, and not their unexpressed intentions or understandings." (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141.)

"An offer is '"a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."' [Citations.]" (*In re First Capital Life Ins. Co.* (1995) 34 Cal.App.4th 1283, 1287.) An offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised will be reasonably certain. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811–812.) An acceptance is an expression of assent to the offered terms, and must "comply with the terms of the offer." (*Schreiber v. Hooker* (1952) 114 Cal.App.2d 634, 639.) The acceptance must be communicated to the offeror for the acceptance to be effective. (*Coml. Cas. Ins. Co. v. Ind. Acc. Com.* (1953) 116 Cal.App.2d 901, 907.)

In general, the existence of mutual assent is a question of fact. (*Bustamante v. Intuit, Inc.*, *supra*, 141 Cal.App.4th at p. 208.)

Here, the terms of the loan modification proposal alerted plaintiffs to the fact the modification was contingent upon the happening of two events—timely return of the agreement, and OneWest Bank's notification to plaintiffs of its acceptance of the verification of plaintiffs' income. The agreement states: "This Agreement is not binding on [OneWest Bank], unless and until [OneWest Bank], verifies that you qualify for this modification offer. You must promptly provide [OneWest Bank] acceptable information to permit verification of your income, and make the payments shown in the payment schedule in paragraph 4 of this Agreement, while [OneWest Bank] verifies your information. If you qualify, [OneWest Bank][] will sign and return this Agreement to you, and it will be effective on the date it is signed by [OneWest Bank]." As this language of the loan modification proposal and the undisputed facts conclusively establish, no loan modification contract was formed because OneWest Bank never returned to plaintiffs a signed copy of the agreement in accordance with its terms, nor did OneWest Bank accept or verify plaintiffs' income as being sufficient to satisfy the

specific minimum income requirements of the loan modification proposal. Thus, evidence of OneWest Bank's motivation in proposing the loan modification, plaintiffs' rental income, or plaintiffs' arrearages under the loan were irrelevant to the formation of contract issue because plaintiff did not meet the precise conditions precedent to enter into an agreement with OneWest Bank. Even if the proffered evidence was relevant, given the contractual language quoted above, no prejudice resulted from the evidence's exclusion because plaintiffs' failure to meet the conditions precedent in a timely manner (by providing evidence of rental income) meant they had not met the terms of OneWest Bank's offer. Further, there is no evidence that OneWest Bank's motivation—to keep homeowners in their homes—was anything other than innocent; thus, any motivation that plaintiffs privately ascribed to OneWest Bank was not probative of contract formation.

Nonetheless, even assuming plaintiffs timely returned the necessary financial information, and even assuming we accept their version of the facts that they never received OneWest Bank's June 5, 2009 rejection of their loan modification, the terms of the agreement make it clear no loan modification was ever entered into because such modification would only become binding upon OneWest Bank's notification of its acceptance of plaintiffs' income information. Plaintiffs' post hoc attempts to provide rental income that was not initially provided to OneWest Bank cannot retroactively breathe life into the loan modification, and thus the trial court properly excluded evidence on this issue.

Further, evidence that the loan modification was an atonement for OneWest Bank's past credit reporting errors was not relevant to the issue of whether plaintiffs properly accepted OneWest Bank's offer of a loan modification by meeting the two contingencies. Rather, if plaintiffs had been able to establish as a predicate that a loan modification was entered into with OneWest Bank, but on less favorable terms than they could have obtained elsewhere, this evidence would have been relevant to damages. In addition, whether plaintiffs were in arrears on their loan at the time of the proposal was not relevant to the issue of whether a loan modification agreement was effectively

10

entered into because the status of plaintiffs' loan was not a prerequisite to the contract; rather, the stated contingencies were.[5] Thus, the trial court properly excluded all of this evidence as not relevant to the threshold issue of contract formation.

Similarly, plaintiffs' three categories of proffered evidence was not relevant to plaintiffs' fraud claims. Fraud requires a showing of (1) a misrepresentation of a material fact, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) Even assuming plaintiffs timely sent in a complete loan package, at most, the facts establish that plaintiffs did not receive OneWest Bank's rejection letter and continued to send the reduced payment in a belief that they had qualified for the loan modification. This reliance was not reasonable given the plain language of the agreement that, "This Agreement is not binding on [OneWest Bank], unless and until [OneWest Bank], verifies that you qualify for this modification offer. . . . If you qualify, [OneWest Bank][] will sign and return this Agreement to you, and it will be effective on the date it is signed by [OneWest Bank]." As a result, OneWest Bank's motivation in proposing the

---

[5] To the extent plaintiffs argue that the trial court favored defendant by referring to "us" when the court rejected evidence their loan was not in arrears, we find no bias. "When reviewing a charge of bias, ' . . . the litigants' necessarily partisan views should not provide the applicable frame of reference. [Citations.]' [Citation.] Potential bias and prejudice must clearly be established [citation] . . . . [Citation.] 'Bias or prejudice consists of a "mental attitude or disposition of the judge towards [or against] a party to the litigation. . . ."' [Citations.] Neither strained relations between a judge and an attorney for a party nor '[e]xpressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are . . . evidence of bias or prejudice. [Citation.]'" (*Roitz v. Coldwell Banker Residential Brokerage Co*. (1998) 62 Cal.App.4th 716, 724.) Thus, a party cannot premise a claim of bias on a judge's statements made in his official capacity (*Jack Farenbaugh & Son v. Belmont Construction, Inc*. (1987) 194 Cal.App.3d 1023, 1031), or a judge's substantive opinion on the evidence (*Kreling v. Superior Court* (1944) 25 Cal.2d 305, 312) or the judge's ruling (even erroneously) against the party (*McEwen v. Occidental Life Ins. Co*. (1916) 172 Cal. 6, 11). The court's reference to "us" was a figure of speech, not the taking of sides; indeed, the court indicated it was ready to hear plaintiffs' argument on fraud if plaintiffs could make one.

loan, or plaintiffs' rental income, had nothing to do with plaintiffs' decision to apply for a loan modification or to send in reduced payments, and do not support their fraud claim.

Similarly, there is no evidence that OneWest Bank waived these requirements of the agreement by accepting plaintiffs' reduced payments. A waiver is the relinquishment of a known right, and a question of fact. (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12.) As the parties had not entered into a loan modification, plaintiffs were still required to pay the full $6,226.22 amount; as a result, OneWest Bank applied the reduced payments to satisfy plaintiffs' outstanding obligations on the loan. Plaintiffs point to nothing that prohibited OneWest Bank from doing so.

Nor was OneWest Bank unjustly enriched when it accepted the reduced payments. A claim for unjust enrichment lies where, even in the absence of an oral contract, the plaintiff has "nonetheless . . . conferred a benefit on the defendant which the defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value. [Citation.]" (*Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938.) Unjust enrichment is a failure to make restitution under circumstances where it is equitable to do so, and is intended to fill the gap where common civil law and statutes fail to achieve justice. (*Ibid*.) Plaintiffs point to nothing establishing how OneWest Bank was unjustly enriched by accepting monies that were less than what it was entitled to under the terms of the loan.

The terms of the proposed loan modification provided for an increase in the principal amount of plaintiffs' loan. Plaintiffs presented no evidence that OneWest Bank actually increased the principal balance in the absence of the failed loan modification. Thus, their claim that OneWest Bank wrongfully increased the principal of their loan is without merit.

12

## DISPOSITION

The judgment is affirmed.  Respondent is to recover costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


MALLANO, P. J.


ROTHSCHILD, J.