Filed 7/28/21  Conservatorship of Elizabeth R. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of ELIZABETH R. | B304601 |
| PATSY LYNN R.-VALINE et al.<br><br>    Petitioners and Appellants,<br><br>    v.<br><br>LINDA ATKINSON,<br><br>    Conservator and Respondent,<br><br>ELIZABETH R.,<br><br>    Conservatee and Respondent. | (Los Angeles County Super. Ct. No. 17AVPB00415) |

APPEAL from orders of the Superior Court of Los Angeles County, Randolph A. Rogers, Judge.  Affirmed.

MacCarley & Rosen, Mark MacCarley, Lisa MacCarley; Law Office of Ann C. Schneider and Ann C. Schneider for Petitioners and Appellants.

Greenspoon Marder, Matthew D. Kanin; Law Offices of Nancy Reinhardt and Nancy Reinhardt for Conservator and Respondent.

Gerald J. Miller for Conservatee and Respondent.

_____

Appellants Patsy Lynn R.-Valine and LaVerne Rae R. appeal from an order after trial appointing respondent Linda Atkinson, a professional fiduciary, as conservator of the person and estate of their mother, respondent Elizabeth "Betty" R.[1] Appellants argued below that they, not Atkinson, should be placed in charge of their mother's affairs.

Appellants raise three contentions on appeal: (1) the probate court was biased against them; (2) Atkinson and a probate investigator failed to comply with requirements of the Probate Code; and (3) the probate court erroneously admitted documents containing hearsay, including the probate investigator's reports.

Appellants forfeited their first and second contentions by not raising them below, and those contentions also fail on the merits. As for their third contention, most of the challenged documents were not in fact admitted at trial, contrary to appellants' assertion. Although it appears the probate investigator's reports were admitted at trial, appellants fail to show any prejudice from their admission.

_____

[1] Because Betty, Patsy, and LaVerne share a last name, we refer to them by their first names. No disrespect is intended.

2

Accordingly, we affirm.

## FACTUAL BACKGROUND

The challenges on appeal are directed at the probate court's conduct of the proceedings as opposed to the merits of the underlying dispute among the parties. We, however, provide some background information for context.

The instant proceedings commenced in November 2017. At the time, Betty was 81 years old, and suffered from dementia and cognitive impairment.

Betty was married to David Nelson, who was also in his 80's. They had met in the late 1990's and married in 2003, when Betty was approximately 67 years old. They divorced three or four years later—according to Nelson, they did so for income tax liability purposes. Their relationship did not otherwise change, and they continued to live together as if they were still husband and wife.

LaVerne and Patsy are Betty's daughters from a previous marriage.

Betty and Nelson remarried on September 19, 2017. According to Nelson, they were motivated to do so following a meeting a few days earlier with LaVerne at which LaVerne announced that she was taking Betty to live with her, a proposition to which both Betty and Nelson objected.[2] LaVerne

---

[2] At trial, LaVerne testified she "brought up . . . possibly having [Betty] live with us" out of concern for Betty falling and Nelson being unable to pick her up. Betty's counsel then confronted LaVerne with her earlier declaration stating she told Nelson, in front of Betty, "that due to my mother's failing health

3

and Patsy's position was that Nelson manipulated an infirm Betty into remarrying him so he could access her financial assets.

## PROCEDURAL HISTORY

The procedural history of this case is extensive. A brief summary of key points suffices for purposes of this appeal. Additional procedural history is summarized in the applicable parts of the Discussion, *post*.

On November 28, 2017, Sydney Bailey, Nelson's daughter from a previous marriage, filed a petition to be appointed Betty's conservator. Bailey averred that Betty did not want LaVerne to remove her from her home and Nelson. Bailey further averred that LaVerne and Patsy had misappropriated Betty's money and property without her consent, and that LaVerne's husband had "forcibly entered Betty's home, under the guise of performing a welfare check," and had taken "all of Betty's financial records, credit cards, a check book, social security card, and cash." Included with the petition was a writing signed by Betty consenting to a conservatorship and nominating Bailey as conservator.

LaVerne and Patsy filed an objection to Bailey's petition. They contended that Nelson was manipulating Betty against them, and had taken advantage of her incapacity in order to marry her, thus overriding LaVerne's power of attorney and giving Nelson access to Betty's financial assets. LaVerne and Patsy also filed their own petition for appointment as Betty's conservators, to which Bailey filed an objection.

---

and his age, that we were going to take my mother to our home to care for her. And that he was welcome to see her any time."

4

On May 24, 2018, the probate court appointed professional fiduciary Atkinson as Betty's temporary conservator. On August 1, 2018, Atkinson petitioned to be appointed Betty's full, non-temporary conservator. The petition averred that Atkinson was aware of LaVerne's "threats" to remove Betty from her home, and that Betty and Bailey believed LaVerne and Patsy had misappropriated Betty's financial assets.

Atkinson's petition attached a signed writing from Betty consenting to the conservatorship and nominating Atkinson as conservator, with Bailey as her second choice. Nelson also provided a signed writing nominating Atkinson as conservator, with Bailey as a second choice.

LaVerne and Patsy filed an objection to Atkinson's petition, contending that Atkinson believed unreliable gossip from Nelson and Bailey, and that Betty was not competent to consent to the appointment of a conservator.

Trial on the competing petitions took place between May 20 and May 31, 2019, with six days of witness testimony.[3] Betty herself testified. Asked if she understood what a conservator was, Betty stated, "It's someone that will take care of your money and everything." She identified Atkinson as her current conservator, and said, "She's great." Asked if she would prefer LaVerne to be her conservator, she said, "No." She testified she

---

[3] Although not relevant to this appeal, in LaVerne's trial brief and closing argument she appears to have changed her position, arguing that the probate court should deny LaVerne's petition for conservatorship without prejudice and instead reinstate LaVerne's power of attorney. She continued to argue that Bailey's and Atkinson's petitions should be denied with prejudice.

"wouldn't like it at all" if the court allowed her daughters to take her out of her home.[4]

Following posttrial briefing, the probate court issued a proposed order and statement of decision appointing Atkinson as Betty's conservator. LaVerne and Patsy filed a request for a supplemental statement on specific controverted issues, and requested the trial be reopened for submission of additional evidence. LaVerne and Patsy contended the probate court had relied on hearsay in favor of live testimony, there was insufficient evidence on a particular issue not relevant to this appeal, and that Nelson's testimony was not credible.

The probate court denied the request to reopen trial and stood by its ruling in favor of Atkinson, making some revisions to the statement of decision to reflect "the Court's observations during the hearing."[5] In the final statement of decision, the probate court found that Betty was competent to remarry Nelson and the marriage was not the result of undue influence; that Betty was competent to consent to a conservatorship and to express a preference for Atkinson as her conservator; and that even if Betty were not competent to consent, a conservatorship was appropriate.

---

[4] In her closing argument, LaVerne contended that Nelson had "brainwash[ed]" Betty into believing her daughters had stolen from her, as evidenced by the fact that Betty in her testimony was unable to offer specifics about the purported thefts. For this reason, LaVerne further argued that Betty's "statements regarding her affinity for Linda Atkinson should be disregarded."

[5] The record does not contain a transcript of the hearing on LaVerne and Patsy's request for a supplemental statement.

6

The court stated, "The evidence clearly and convincingly establishes that the real reason this conflict arose was because LaVerne was so concerned that her inheritance was going to be exhausted by Betty's largesse with David that LaVerne decided to exploit the fact that Betty and David were technically no longer married to take the balance of Betty's assets and income while she could . . . and, in the process, remove Betty from the home she shared with David. The evidence unequivocally shows that LaVerne was motivated by her own self-interests, and not by the best interests of Betty, in direct violation of the fiduciary duties owed by her to Betty under the Durable Power of Attorney and as Successor Trustee under the [R.] Family Trust."

LaVerne and Patsy timely appealed. Atkinson and Betty both filed respondent's briefs arguing for affirmance.

## DISCUSSION

### A. The Claim of Judicial Bias is Forfeited and Also Fails on the Merits

Appellants do not contend the probate court's ruling was unsupported by evidence in the record. Rather, they contend that the probate court was biased against them, "most particularly Laverne," "and women in general." Appellants further contend the probate court was biased "against adult children of a parent who remarries." As a result, appellants argue the probate court "had made up its mind before the presentation of evidence had concluded," thus violating their due process right to an impartial decisionmaker.

" 'Bias is defined as a mental predeliction or prejudice; a leaning of the mind; "a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly

7

open to conviction." ' [Citation.]" (*Baxter v. Bock* (2016) 247 Cal.App.4th 775, 791.)

Bias claims can be forfeited if raised only for the first time on appeal.[6] In the words of our Supreme Court: "A [party] may not go to trial before a judge, betting on a favorable result and failing to raise objections of bias, and then argue on appeal that the judge was biased." (*People v. Johnson* (2018) 6 Cal.5th 541, 592.) Indeed, a party's "willingness to let the entire trial pass without articulating an appropriate [bias] objection 'strongly suggests' [the] claim is without merit." (*Ibid.*) Thus, our Supreme Court rejected a claim of bias based on a " 'grab bag' of the [trial] court's rulings" when the defendant "never objected to the vast majority of these rulings—and not once on the ground of bias—nor did he ever move to disqualify the court on the ground of bias." (*Ibid.*)

*Johnson* stands for the proposition that a party must take steps in the trial court to address bias in order to preserve the issue for appeal, whether by making appropriate objections or moving to disqualify the judge. We need not decide what steps would have been appropriate in the instant case, because the record indicates appellants took *no* steps. We have reviewed the portions of the reporter's transcript and statement of decision cited by appellants, and there is no indication appellants objected *at all* to the purportedly problematic statements by the trial court, on the basis of bias or otherwise. Nor did appellants seek to disqualify the judge. The closest they came to raising the issue of bias was in their request for a supplemental statement of

---

[6] At our request, the parties submitted supplemental briefing on the issue of forfeiture.

8

decision, which, according to their appellate briefing, they filed "to address the judge's implausible conclusions as a result of his gender bias." In that filing, they stated, "Since the Court clearly gives deference to declarations by men who don't testify over the live testimony of women, [should the court grant LaVerne and Patsy's request to reopen the trial,] the Court will also be provided with several more declarations by men who won't testify." Needless to say, this remark does not constitute a proper objection, nor can it be construed as an effort to disqualify the judge.

Appellants argue they are excused from forfeiture because any action taken below would have been futile or would have not cured the bias. Assuming arguendo the forfeiture is excusable, appellants' challenge nonetheless fails on the merits. "Absent a financial interest, adjudicators are presumed impartial." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 219.) The burden to show nonfinancial bias is high: "Potential bias and prejudice must clearly be established [citation] and statutes authorizing disqualification of a judge on grounds of bias must be applied with restraint." (*Roitz v. Coldwell Banker Residential Brokerage Co.* (1998) 62 Cal.App.4th 716, 724 (*Roitz*).)

A judge is not biased merely because he or she indicates an inclination for or against a party after receiving evidence or argument. (*People v. Perez* (2018) 4 Cal.5th 421, 441 (*Perez*) [judge may not be disqualified for "express[ing] an adverse impression of a party that was 'based upon actual observance of the witnesses and the evidence given during the trial of an action.' [Citations.] "].) This principle is codified in the Code of Civil Procedure, which provides that "[i]t shall not be grounds for

9

disqualification that the judge . . . has in any capacity expressed a view on a legal or factual issue presented in the proceedings," subject to exceptions not applicable here.  (Code Civ. Proc., § 170.2, subd. (b).)  Further, "[n]either strained relations between a judge and an attorney for a party nor '[e]xpressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are . . . evidence of bias or prejudice.  [Citation.]' [Citation.]" (*Roitz, supra*, 62 Cal.App.4th at p. 724.)

Appellants contend the probate court demonstrated bias towards them when it criticized comments by appellants' trial counsel as, for example, "misleading" or "deceptive."  They also argue the trial court was harsh with appellants themselves, for example commenting in the statement of decision that appellants' "hypocrisy is palpable" for objecting to Atkinson's petition when they themselves were seeking a conservatorship.

Appellants further argue that comments by the probate court indicated it had made up its mind before all the evidence had been presented.  They emphasize in particular the court's comments as to why evidence of appellants' relationship with Betty prior to LaVerne announcing her intent to take Betty to live with her were not informative on the issues before the court. The court made the comments before Nelson had completed his testimony, and before LaVerne or her husband had testified.  The court stated, "[I]t doesn't really matter how extraordinary their relationship was before September. . . . We're dealing with what happened."  The court then stated it was not "surprised by the sequences of events" because "[w]e see this sort of thing with some regularity.  I mean, it is a second marriage.  I'm sure that LaVerne, in particular, feels like Betty's assets were the product of her father and her mother's marriage, basically."  The court

10

noted that LaVerne was a trustee of a "separate trust" and had power of attorney "if Betty became incompetent, and it is not unusual under those circumstances to see someone in LaVerne's position move to protect their interests. And that's what it looks like happened that she moved to protect her interests and here we are."

As an initial matter, apart from the fact that appellants and their counsel were all women, appellants identify nothing to indicate the probate court's comments or attitude towards them were motivated by gender bias. We note the probate court ruled in favor of several women, including Atkinson and Betty herself, and that Atkinson's counsel also was a woman. The probate court's comment that it is not unusual for children from a first marriage to move to protect their interests when a parent remarries was merely a comment based on the probate court's experience, not an indication of bias against children of first marriages.

Assuming the court's comments during trial and the statement of decision took a dim view of appellants' conduct and motives, this was central to an issue the probate court had before it, namely, whether Atkinson or appellants would be the better conservator for Betty. The fact that the probate court decided that issue against appellants, in so doing "express[ing] an adverse impression of a party . . . 'based upon actual observance of the witnesses and the evidence given during the trial of an action[,]' [citations]" (*Perez, supra*, 4 Cal.5th at p. 441), does not equate to bias against appellants or anyone else.

The probate court's comments cited by appellants also fail to establish that the court had made up its mind before receiving all the evidence. In a bench trial, it is both appropriate and

11

useful for a court to indicate what information it believes is important and what information is cumulative or irrelevant, to better guide the parties in the presentation of their evidence. This often involves the court stating its tentative view of the case up to that point. In doing so, the court merely is "express[ing] a view on a legal or factual issue presented in the proceeding . . . ." (Code Civ. Proc., § 170.2, subd. (b).)

## B. The Claims That Atkinson and the Probate Investigator Did Not Satisfy Statutory Requirements Are Forfeited and Also Fail on the Merits

Appellants contend that Atkinson's petition for conservatorship and the probate investigator's reports did not comply with requirements of the Probate Code. Appellants forfeited these arguments for failing to raise them below. They also lack merit.

Under Probate Code[7] section 1821, a petition to establish a conservatorship "shall include a brief statement of facts" addressing specific categories of information, including "[a]lternatives to conservatorship" and "[t]he inability of the proposed conservatee . . . to resist fraud or undue influence." (§ 1821, subds. (a)(3), (5).) Appellants contend Atkinson's petition did not include this information.

Under section 1826, a probate investigator shall interview, inter alia, "[t]he proposed conservatee's . . . relatives within the first degree," and "[t]o the greatest extent practical and taking into account the proposed conservatee's wishes, the proposed conservatee's relatives within the second degree . . . , neighbors,

---

[7] Unspecified statutory citations are to the Probate Code.

12

and, if known, close friends." (§ 1826, subds. (a)(1)(C), (D).) The investigator shall also refer to the information submitted with the conservatorship petition and "consider the facts" relating to the categories of information required by section 1821, including the proposed conservatee's ability to resist undue influence. (§ 1826, subd. (a)(4)(A).) Appellants contend that the probate investigator never interviewed appellants or Betty's close friends.

We shall assume arguendo that that appellants, as opposed to Betty herself, have standing to challenge those purported deficiencies. Even so, appellants' arguments fail. In our request for supplemental briefing, we asked appellants to identify where in the record they objected either to Atkinson's petition or the probate investigator's reports for failure to comply with sections 1821 and 1826. In response, appellants concede they did "[n]ot directly" raise those contentions. Rather, they contend they argued that the allegations raised in their own petition were not being properly investigated. They do not, however, provide citations to the record evidencing this contention. " 'We are not required to search the record to ascertain whether it contains support for [appellant's] contentions.' [Citation.]" (*Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14.)

In the absence of any semblance of objection below, the probate court had no opportunity to address any purported deficiencies in Atkinson's and the probate investigator's filings before ruling. It would be unfair to reverse the probate court for purported procedural errors that it could have addressed had

appellants brought them to the court's attention.  We thus consider these arguments forfeited.[8]

Appellants' arguments also fail on the merits.  Section 1826, concerning the contents of the probate investigator's report, by its terms "does not apply to . . . a proposed conservatee who has nominated his or her own conservator, if he or she attends the hearing."  (§ 1826, subd. (d).)  Here, Betty both nominated Atkinson as her conservator and attended the hearing.  Section 1826 is unavailing to appellants.

As for appellants' arguments under section 1821, we note that Atkinson's petition expressly indicated that Betty was unable to resist fraud or undue influence, and supported that statement with factual assertions regarding LaVerne's "threats" to remove Betty from Nelson, and LaVerne's and Patsy's efforts to take money and property from Betty.  Appellants' objection on appeal is not that Atkinson's petition failed to address undue influence at all, but that it did not address appellants' particular contention that Nelson was the one unduly influencing Betty.  Appellants identify no authority that a party petitioning for a conservatorship must consider or address an opposing party's

_____

[8] Appellants argue they did not know the probate investigator's reports were admitted into evidence until the probate court issued its statement of decision, and therefore had no opportunity to object to the reports' purported procedural deficiencies.  This is inaccurate.  The probate court quoted the probate investigator's reports in its proposed statement of decision, and appellants had the opportunity to object at that time.  Indeed, appellants availed themselves of that opportunity and raised a hearsay objection to the probate investigator's reports.  They did not, however, object that the reports were defective under section 1826.

14

contentions in the petition. Atkinson's petition set forth her concern that Betty was at risk of undue influence from her daughters, and thus satisfied that requirement of section 1821.

As far as we can determine, Atkinson's petition did not address alternatives to conservatorship. Appellants cite no authority, however, that this deficiency mandates reversal of the probate court, and reversal on that ground would make little sense given that Betty herself consented to the conservatorship, both in writing and at trial.

These purported omissions in Atkinson's petition and the probate investigator's reports also were harmless. Although it is not entirely clear from appellants' briefing, it appears they contend the purported errors deprived the probate court of information it needed when considering whether to appoint a conservator and, if so, whom to appoint. Appellants further contend that because the probate investigator failed to interview them or examine their claims that Nelson was unduly influencing Betty, the investigator's reports were inappropriately one-sided.

Yet appellants had six days of trial in which they presented their own testimony and the testimony of other witnesses of their choosing. They had ample opportunity to present their own version of events and fill in any gaps left by Atkinson's petition and the probate investigator's reports, as did Betty herself, who appeared at trial and was represented by her own counsel. Under these circumstances, any such gaps were harmless error. Although appellants disagree with the trial court's conclusions as to the weight and credibility of particular evidence, they do not identify any evidence the probate court barred them or Betty from introducing. We therefore reject appellant's position that the probate court was lacking in information merely because that

15

information did not appear in Atkinson's petition or the probate investigator's reports.

## C. Appellants' Evidentiary Challenges Are Without Merit

Appellants contend the probate court improperly relied on reports provided by Betty's court-appointed counsel, declarations submitted by Nelson and Bailey, and the probate investigator's reports. The legal basis of appellants' objection to Betty's counsel's reports is not entirely clear, but they claim those reports are unfair and unreliable. As for the declarations of Nelson and Bailey and the probate investigator's reports, appellants argue they contain inadmissible hearsay. Appellants raised these objections below, thus properly preserving the issues for appeal.

As we discuss, the probate investigator's reports are differently situated than the Nelson and Bailey declarations and the reports of Betty's counsel, and thus we address the two groups of documents separately, beginning with the latter.

### 1. The probate court did not rely on declarations and reports by Nelson, Bailey, and Betty's attorney in rendering its decision

Appellants' challenges to Betty's counsel's reports and Nelson's and Bailey's declarations are easily rejected because the statement of decision makes clear the probate court did not rely on those documents in rendering its decision.

16

The statement of decision quoted or paraphrased documents submitted by Betty's counsel, Nelson, and Bailey,[9] as well as many other documents in this case, in a section entitled "Procedural History" (boldface & some capitalization omitted).  At the outset of that section, the probate court wrote, "The following Procedural History, taken from the pleadings of record, is provided solely to frame the issues presented to the Court for determination.  Unless expressly noted otherwise, the Court does not rely upon any of the pleadings of record for the truth of any matter asserted, even where the Court quotes from the pleading and the pleading is a declaration or is otherwise executed under penalty of perjury."

Later in the statement of decision, the probate court responded directly to the hearsay and other objections raised by appellants to the court's initial proposed statement of decision, stating that, "although the Court had taken judicial notice of and quoted liberally from the pleadings of record in order to frame the issues before the Court, its ruling was in fact predicated solely upon competent evidence admitted at trial."  The statement of decision then devoted 47 pages to excerpting relevant portions of the trial transcript on which it based its ruling, none of which concerned the challenged declarations or attorney reports.

In short, the probate court made clear that its decision was based solely on evidence admitted at trial, and not the pleadings, declarations, and other filings quoted or paraphrased in the procedural history section of the statement of decision.

---

[9] The statement of decision did not quote or paraphrase Bailey's declaration, although it noted the declaration was filed. It did, however, quote from Bailey's objections to appellants' conservatorship petition.

17

Appellants cite to nothing in the record indicating that Nelson's and Bailey's declarations or the reports of Betty's attorney were admitted at trial.[10]  Those documents do not appear in the trial exhibit list.  We therefore conclude that the probate court neither admitted those documents into evidence nor relied on them in rendering its decision.  Thus, assuming arguendo those documents were inadmissible for the reasons stated by appellants, their challenge nonetheless fails.

### 2.    Appellants fail to show prejudice from the admission of the probate investigator's reports

Whereas the record is clear that the probate court did not admit into evidence or rely upon Nelson's and Bailey's declarations or Betty's counsel's reports, it appears the probate investigator's reports were admitted.  As noted, the three investigator reports are listed on the trial exhibit list as exhibits 403–405.  The statement of decision also noted that the first report was admitted at trial as exhibit 403.  Thus, given these references in the statement of decision, in which the probate court stated it based its decision on "competent evidence

---

[10]  In their appellate briefing, appellants state that Betty's attorney's reports were admitted as trial exhibits numbered 403-405.  This is incorrect.  As the trial transcript and the exhibit list make clear, exhibits 403–405 were the probate investigator's reports, not the reports of Betty's attorney.  Indeed, appellants acknowledge this elsewhere in their briefing.  Despite this, appellants repeatedly contend, without support from the record, that the probate court relied on Betty's attorney's reports.

18

admitted at trial," it is conceivable the court considered the investigator's reports when rendering its decision.[11]

Assuming arguendo this was error, an issue we do not decide, appellants have failed to show any prejudice. (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006 [appellant has burden to demonstrate both error and " 'prejudice arising from' that error"].) In the section of their appellate brief with the heading "The Trial Court Committed Prejudicial Error by Admitting the Hearsay" (boldface & italics omitted), appellants do not discuss the contents of the probate investigator's reports, specify which aspects of the reports are problematic, or, crucially, explain why "it is reasonably probable [they] would have obtained a more favorable result absent" admission of the reports. (*Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274, 1286 [stating standard of prejudice for "state law error in admitting hearsay evidence"].)

Appellants do not conduct this analysis elsewhere in their briefing. At most, they quote from the probate investigator's reports in the procedural history section of their opening brief, and follow those quotations with complaints that the investigation was inadequate, an argument we have already addressed in part B, *ante*. In their reply, appellants similarly characterize the reports as the result of "a half-baked

---

[11] Appellants at trial objected to the admission of the probate investigator's reports, which were offered into evidence by Betty. The probate court reserved the issue of admissibility. Given that the statement of decision notes that at least one of the reports was admitted at trial, we presume for purposes of this appeal that the probate court ultimately decided to admit the reports.

investigation," the significance of which the probate court "elevated . . . beyond all appropriate levels." Assuming arguendo this is sufficient to alert us to the allegedly problematic portions of the reports for purposes of appellants' hearsay argument, appellants nonetheless do not explain why, absent those reports, a better outcome for them was reasonably probable.

" 'In civil appeals, the appellate courts are not required to perform an unassisted study of the record or a review of the law relevant to a party's contentions on appeal.  [Citations.]  Instead, a party's failure to perform its duty to provide argument, citations to the record, and legal authority in support of a contention may be treated as a waiver of the issue.' [Citations.]"  (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808, italics omitted.)  Under this principle, appellants' challenge to the admission of the probate investigator's reports fails.

## DISPOSITION

The orders are affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.          CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


20