[Crim. No. 2220.   Third Dist.   Dec. 15, 1950.]

THE PEOPLE, Respondent, v. MERWIN HAMMEL, Appellant.

Blewett, Blewett & Macey for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

ADAMS, P. J.—An information was filed in San Joaquin County charging Merwin Hammel and Clifford Burgin with robbery of one John Lako on November 15, 1949, and, in a second count, with the robbery of one Carlton Gilgert on or about the same date, it being alleged that defendants were armed with deadly weapons, to wit, a shotgun and a revolver. After trial by a jury both defendants were found guilty of count one, the jury disagreeing as to count two.   Frank

Thompson and Walter Williams, who were charged with the same offense, pleaded guilty, and testified for the prosecution.

On this appeal it is contended by Hammel that his conviction is in contravention of section 1111 of the Penal Code, because based solely upon the testimony of accomplices, whose testimony was without corroboration.

The following facts appear. On November 15, 1949, Thompson, Williams, Burgin and Hammel entered the Linden Club bar, about 12 miles from Stockton. Lako, the bartender, testified that it was about 8:30 p. m., but other witnesses testified that it was nearer 6:30. Defendants drank a few beers and left. Some 15 or 20 minutes later Williams and Thompson, armed with a shotgun and a pistol, returned and committed the robbery of Lako. It is not contended by the prosecution that either Burgin or Hammel was present in the bar at the time of the actual robbery, but the testimony of the defendants who testified for the State connected them with it. They stated that they had been with them in the afternoon when it was planned; and Thompson said that Hammel had procured the weapons used by them.

Hammel admitted acquaintance and association with Thompson, Williams and Burgin, and that he had been with them the whole afternoon before the robbery and was with them when they first entered the Linden Club bar; but he testified that when they left it they all drove back to Stockton where he and Burgin remained, and that they did not go back to the Linden Club with Williams and Thompson.

As corroborative of the stories of Williams and Thompson, the prosecution states that the testimony of Daniel Stowe corroborates testimony that Hammel obtained the guns. Mr. Stowe, who ran a lunchroom and fountain in Stockton frequented by the four defendants, stated that he owned a pistol and a shotgun; that in October he lent the pistol to Burgin, and it was returned about a month later by Thompson; that he had lent the shotgun to Hammel several times during the fall, to go deer and rabbit hunting, but he could not say that Hammel had the gun on November 15th; that Hammel and Burgin borrowed his pistol in September or October, during the deer season.

As corroboration of the testimony of the accomplices the prosecution also relies upon testimony of William Kates, a deputy sheriff, who stated that Hammel admitted to him that during the day of November 15th Thompson and Williams had in his presence discussed the robbery at Linden. It is also

argued by the prosecution that Hammel made statements that conflicted with his testimony at the trial and tended to inculpate him, to wit, a prior denial by Hammel that he had gone to the Linden Club, and a subsequent one that he went there with the other three and had a beer; also that he admitted that when Thompson and Williams had discussed the robbery they said they would use a gun.

Other testimony that tends to support the conviction is that only 15 or 20 minutes elapsed after the four defendants visited the bar, before Thompson and Williams robbed it, and that such time was insufficient for the party to have driven to Stockton, as Hammel claims they did, and for Thompson and Williams to have returned to the Linden Club. There was also testimony that while Williams and Thompson were committing the robbery someone hammered on the door apparently as a warning of some sort, and that the two then ran out.

██ Reviewing the evidence in the light most favorable to the respondent, as we are required to do (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Griffin*, 98 Cal. App.2d 1 [219 P.2d 519]), we cannot say that there was insufficient corroboration of the testimony of the accomplices. In *People* v. *Griffin* (hearing in Supreme Court denied) we held that the entire conduct of the parties, their relationship, acts and conduct during and after the crime, may be taken into consideration by the jury in determining the sufficiency of the corroboration; that corroborative evidence need not be strong, and is sufficient if it tends in some slight degree to implicate the defendant; and that circumstantial evidence suffices for the purpose of corroboration if the connection of the defendant with the alleged crime reasonably may be inferred from the corroborative evidence.

We think that the evidence in this case meets the foregoing tests. The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.