[Crim. No. 2455.   Third Dist.   Jan. 8, 1954.]

THE PEOPLE, Respondent, v. GEORGE RAYMOND HECK, Appellant.

Edward S. Muktarian, under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—On January 7, 1952, the district attorney of Eldorado County filed an information against appellant, and against George Theodore Poulter and Roland Wayne

Wright, charging them with escape from the state prison at Folsom (count I) and attempted robbery (count II). Appellant was also charged with four prior felony convictions, and Poulter and Wright were each also charged with prior felony convictions. At the arraignment Poulter pleaded guilty to the first count and not guilty to the second. He admitted the prior felony convictions. Appellant and Wright each pleaded not guilty to both counts, and each also admitted the prior felony convictions. The case was set for trial and prior to the date of the trial Poulter withdrew his plea of not guilty and pleaded guilty to both counts. Appellant and Wright were tried and found guilty by the jury. Appellant made a motion for a new trial, which was denied, and following the pronouncement of judgment, appellant filed a notice of appeal from the judgment.

As grounds for a reversal of the judgment, appellant contends (1) that the trial court committed prejudicial error in (a) commenting on a defense request that defendants' witnesses be excluded from the courtroom, (b) its refusal to permit defendants' counsel to question Poulter with regard to his intent as to count II, (c) its comments that the case must be speedily concluded, and (d) the questions directed by it to the materiality of questions propounded by defendants' counsel to the witness Sam Alexander; and (2) that the evidence is not sufficient to support the verdict on the second count (attempted robbery). Before discussing these contentions we shall give a brief summary of the evidence as shown by the record.

On September 30, 1952, appellant, Poulter and Wright, who were inmates in the state prison at Folsom, escaped from the prison by concealing themselves in a truck. When the truck was outside the prison walls, but still on the prison grounds, the three prisoners jumped from the truck and made their way to the highway where they obtained a ride into Placerville. Poulter testified that the driver of the car gave appellant a $10 bill which Poulter used to buy hamburgers, whiskey and cigarettes when they arrived in Placerville. After eating and drinking, they started to walk out of town, toward the highway. As the three prisoners were walking out of Placerville, they approached the parking lot of a Safeway store on the eastern edge of town. This was between 8:30 and 9 o'clock in the evening of September 30th, and the lights in the parking lot had just been turned out, preparatory to closing the store. At that time Robert

Hord was sitting in his car, a two-door Chevrolet club coupé, which was parked in the parking lot. His wife was in the store purchasing groceries, and he was waiting for her. He was sitting on the driver's side of the front seat, holding his 11-month-old daughter in his lap. He testified that Poulter came up to the driver's side of the car, leaned in and put something against his (Hord's) neck and said, "This is a knife. Be quiet and you won't get hurt." Hord stated that he had no money, whereupon Wright, who was at the other side of the car and stuck his head through the window, asked how much gas Hord had. Hord replied that he had only a quarter or half a tank. According to Hord, Poulter then said, "You guys get in the back and lay down," and Hord heard the right door of the car open, the seat on that side went forward, and someone climbed into the car and went to the back seat. This happened twice. Hord stated that Poulter still had the knife at his (Hord's) throat, so that he did not turn to see what was happening. About this time Mrs. Hord came out of the store, followed by George Schwartz who was pushing a cart of groceries. Schwartz was a 16-year-old boy who was employed at the store to box grocery purchases. Hord testified that Poulter then said to him, "Just be quiet and don't get her excited. We don't want her to get hysterical," and "Just act like I am a friend and nobody will get hurt." Hord then called to his wife that he had a friend with him, and when she asked who it was he said that it was just a friend and that she did not know him. When Mrs. Hord opened the car door on the passenger's side, Hord jumped from the car, carrying the baby, and shouted to his wife, "Get out of here; he has a knife," or words to that effect. Mrs. Hord started to scream and the Hords ran toward the store. Hord testified that he saw Poulter run around the front of the car and head for the back of a lot. He also saw another man running down the lane back of the car, but he did not see a third man. Mrs. Hord testified that as she ran toward the store she looked back and saw three men running from the car, two of them running toward the back of the store and the other toward an orchard. Schwartz, the grocery boy, testified that he saw two men running and thought that they were chasing him as he ran back to the store. One of them was the man who was at Hord's side of the car when Mrs. Hord and the boy came out of the store with the groceries. Neither Mrs. Hord nor Schwartz was able to identify the men they saw running.

All three prisoners were apprehended the following morning. Poulter and Wright were together, hiding in the brush east of the city limits, when they were caught. Appellant was alone, but he was also east of the city limits, hiding in the brush. When apprehended, both Poulter and Wright had paring knives on their persons. These knives were the same kind as were used in the prison cannery.

Poulter was called as a defense witness and testified at length regarding the escape and the assault. There are some glaring contradictions in his testimony, but in substance it is that he planned the escape by himself and for himself, alone. Appellant and Wright came over to the truck when he was preparing it for his escape. They appeared to be sick or intoxicated and he took them with him because he was afraid that they would talk and prevent his escape if he let them go. He also testified that he asked them to leave, but they would not go, so he asked them whether they wanted to take a ride around the institution. He stated that he helped them get onto the truck, under the platform, and that when they got off the truck he helped them off. On their way to the highway they passed a reservoir in some hills. This was 4 to 6 miles from the place where they left the truck and it was not on the prison grounds. At Poulter's insistence, appellant and Wright went into the water and it sort of sobered them. They then continued on to the highway and got a ride into Placerville.

Both appellant and Wright testified that they had drunk alcohol derived from shellac, and eaten benzedrine taken from nose inhalators, during the afternoon of September 29th, the day before the escape. They did this to get "high," and each testified in effect that the combination of alcohol and benzedrine had put him in a dazed condition and that he did not remember anything that happened on the day of the escape until he found himself in the water in the reservoir. There is a conflict in the evidence regarding appellant's and Wright's condition during the evening of September 29th and the morning of the 30th. Inmate witnesses testified that appellant and Wright appeared to be sick or "high"; prison officials testified to the contrary. Appellant admitted that when he regained his senses, in the water in the reservoir, he knew that he was off the prison grounds. He testified that he did not return to the prison then because it would have been suicide. Warden Heinz talked with appellant on the day the latter was recaptured and appellant told the warden

that they (the prisoners) got out of the prison on a Department of Public Works' truck. Appellant explained this recollection on his part by stating that he had seen newspaper clippings stating what happened.

Regarding the attempted robbery, appellant testified that he was not with Poulter and Wright when the latter two approached Hord at the car, but that he was sick and that he sat down to rest, about a block and a half from the store. Poulter and Wright both testified that appellant was not with them when they were at the car.

Appellant does not attack the sufficiency of the evidence to support his conviction under count I, but does attack the sufficiency of the evidence to support count II, the attempted robbery count. He argues that the evidence is insufficient to show that he was at the scene of the crime and that none of the complaining witnesses was able to identify him as one of the persons there.

However, as pointed out by respondent, there is strong circumstantial evidence which points to appellant's participation in the attempted robbery. The three men were making an escape and they admitted that they were together, on their way out of town, just before they reached the Safeway store. Appellant admitted that they had not split up yet, and that their plans did not call for splitting up until after they got out of town or got a ride. Poulter admitted that he was looking for transportation, and Wright said that he started to get into the car because he thought the man was going to give them a ride. Wright had also asked Hord how much gas he had in the car. During the attempted robbery, Hord heard Poulter say to someone, "You guys get in the back," or words to that effect, and Hord then heard the car door open and the car seat was moved forward and someone scrambled around in the back seat. This happened twice, as though two persons got into the car. Poulter was standing outside the car at the time. Finally, Mrs. Hord saw three men running away from the car. We are satisfied that there is sufficient evidence to support appellant's conviction on count II. The reasonable inference is that these men were attempting to take, by force, an automobile in which to make a getaway. Otherwise why would Poulter have threatened Hord with the knife? We are required to review the evidence in the light most favorable to respondent. (*People* v. *Hammel,* 101 Cal.App.2d 168, 170 [225 P.2d 8].)

Stated another way, if the circumstances reasonably

justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Appellant next contends that he was prejudiced by the court's comment on his request that defendants' witnesses be excluded from the courtroom. The request was made after some of defendants' witnesses had testified and the court chided defendants' counsel for not having made the request sooner, and then the court granted the request and excluded the witnesses. There is no merit in appellant's contention that the remarks of the court constituted prejudicial error.

Likewise, there is no merit in appellant's contention that the court erred in refusing to permit appellant's counsel to examine Poulter as to the latter's intent to commit robbery. The record shows that Poulter had pleaded guilty to the second count, and in view of this, evidence of his intent would hardly be material or relevant and it is difficult to understand how appellant could have been prejudiced by its exclusion. (*People* v. *Monson,* 102 Cal.App.2d 308, 313 [227 P.2d 521].)

Appellant also complains that the trial judge expressed impatience with the manner in which appellant's counsel was conducting the defense, and complains particularly of the statement of the court during appellant's counsel's examination of Poulter when the court told counsel to proceed, that "we are wasting too much time," and later said, "I want this case finished Friday, no question about it. It must be," and then, turning to the sheriff, said, "Mr. Morris, this case must finish on Friday."

Appellant complains also that during direct examination of Sam Alexander, a general carpenter employed at Folsom prison and one of appellant's witnesses, the trial court expressed impatience at the number of preliminary questions asked the witness, saying, "Why is that material? Get at the meat of it and don't waste so much time with the preliminary questions." Counsel continued with the examination and asked the witness whether he had ever known of appellant drinking on the job. The prosecuting attorney objected to the question as being incompetent, irrelevant and immaterial, whereupon the court said, "I don't see how it is material. Why don't you get at the meat of the subject?"

We do not believe that there was any prejudicial error in

these remarks of the court. The record shows that the appellant was given ample opportunity to fully examine and cross-examine witnesses, and while the trial judge appeared to grow a little impatient at what he was undoubtedly justified in believing was a waste of time, his remarks were no doubt occasioned by a commendable desire to expedite the trial. It is the duty of the trial judge to see that the trial is conducted in an orderly and expeditious manner. (*People v. Corlett,* 67 Cal.App.2d 33, 57 [153 P.2d 595, 964].)

In view of the foregoing we conclude that the evidence fully supports the judgment of conviction and that no prejudicial error was committed.

The judgment is affirmed.

Peek, J., and Paulsen, J. pro tem.,\* concurred.

\*Assigned by Chairman of Judicial Council.