Filed 11/10/20  Klein v. Munger CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CYNTHIA KLEIN,<br><br>        Plaintiff and Appellant,<br><br>                v.<br><br>KEWEL MUNGER et al.,<br><br>        Defendants and Respondents. | F077605<br><br>(Super. Ct. No. CV276206)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark and Stephen D. Schuett, Judges.

Thomas Anton & Associates, Thomas J. Anton and Becky M. Brooks for Plaintiff and Appellant.

Hoppe Law Group and Theodore W. Hoppe for Defendants and Respondents.

-ooOoo-

Plaintiff Cynthia Klein appeals from a judgment confirming an arbitration award in favor of defendants Kewel Munger, also known as Kable Munger, and several entities with which Munger is associated (collectively, defendants).  Plaintiff claims the trial

_____

[*]Before Peña, Acting P.J., Meehan, J. and Snauffer, J.

court erred by denying her motion to vacate the award based on the arbitrator's alleged lack of impartiality. Plaintiff also challenges a portion of the judgment awarding defendants over $27,000 in costs. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants are involved in the agricultural industry. In approximately 2007, plaintiff began working for defendants in an unspecified capacity. By 2009, she had been promoted to the position of "General Manager."

In late 2010, plaintiff was demoted. The decision was allegedly based on performance issues ranging from inadequate managerial skills to "excessive absenteeism, tardiness and early departures." Plaintiff's salary and benefits remained the same despite the demotion. However, her problems with absenteeism continued through 2011.

In 2012, plaintiff sued defendants for wrongful termination and breach of contract, among other causes of action. The claims were primarily based on two contentions. First, plaintiff alleged that defendant Munger sexually assaulted her outside of a restaurant in October 2009. Second, plaintiff alleged the existence of a revenue sharing agreement between her and defendants that defendants had failed to honor.

Pursuant to an alternative dispute resolution (ADR) clause in plaintiff's employment agreement, the case was referred to binding arbitration. The parties selected a Sacramento-based attorney, Nicholas Lowe, to serve as their arbitrator. The arbitration hearing was conducted in Bakersfield during the week of October 16–20, 2017, and on January 31, 2018.[1]

On October 20, 2017, after several days of witness testimony, plaintiff demanded that the arbitrator recuse himself due to conduct allegedly indicative of bias. The arbitrator did not recuse himself, which led to plaintiff filing a motion to disqualify him.

---

[1]Although plaintiff initially disputed the enforceability of the ADR clause, the record does not fully explain the five-and-one-half-year interval between the filing of her lawsuit and the proceedings at issue in this appeal.

The trial court denied the motion as premature. On January 31, 2018, the arbitration hearing resumed and concluded.

In February 2018, the arbitrator issued his 11-page award. All claims were resolved against plaintiff and in favor of defendants. The arbitrator's findings and conclusions are only tangentially relevant to the issues on appeal, but plaintiff discusses them in her briefing and argues they support her claims of actual or apparent bias. Plaintiff's discussion of the findings is selective and contains notable omissions. For those reasons, and because it will serve to contextualize plaintiff's allegations, we summarize the arbitrator's stated basis for his decision.

On October 8, 2009, a consultant named Randy Porter provided training "at the business premises of defendants." Porter testified to having had "a romantic interest" in plaintiff, who was a married woman. Plaintiff and Porter were well acquainted, and she agreed to have dinner with him that evening—ostensibly in a professional context. According to the testimony of plaintiff and Porter, plaintiff ultimately cancelled their dinner plans because defendant Munger had asked her to meet with him.

According to plaintiff, she and defendant Munger met at a particular restaurant (restaurant #1) and "talked over some business matters" while inside the establishment. Afterward, Munger walked plaintiff to her car. While plaintiff was seated in her vehicle, Munger "grabbed her hand and put it on his penis." Plaintiff reacted by saying, "'I have to go.'" She then "drove immediately home and told her husband of the assault when he got home [from work] at 2:30 a.m."

The arbitrator found the testimony of plaintiff and Porter to be untruthful. In an e-mail sent by Porter to plaintiff the day after the alleged assault, Porter had thanked her "for the dinner 'last night.'" Plaintiff submitted a credit card receipt to defendants for reimbursement, which showed she had eaten at a certain restaurant (restaurant #2) on the night in question. Plaintiff wrote the word "training" on the receipt, "which is what Randy Porter had done that day at the business office." The restaurant bill was paid at

3.

10:48 p.m.  Phone records revealed plaintiff and Porter were later in contact by phone at 11:39 p.m. and 11:42 p.m.

Aspects of plaintiff's story were further contradicted by the testimony of her husband.  Whereas plaintiff had testified to going straight home after being sexually assaulted outside of restaurant #1, her husband said she did not arrive home until "'very late, after 2:30 or 3 a.m.'"  Upon her arrival, she told her husband that she had gone out to dinner with defendant Munger and alleged that Munger had behaved inappropriately.

Munger produced documents showing his credit card was used at a different restaurant (restaurant #3) on the night of the alleged assault.  In light of all the evidence, the arbitrator found that plaintiff and Porter had dinner together at restaurant #2, Munger dined separately at restaurant #3, and the alleged events at restaurant #1 never occurred.  The arbitrator described plaintiff's testimony regarding Munger's alleged misconduct as "extremely general and … overly vague and therefore not believable."  Consequently, the arbitrator found "there was no sexual assault.'"

Plaintiff had accused defendants of retaliation stemming from her rejection of Munger's sexual advance outside of restaurant #1.  Having concluded the predicate allegations were false, the arbitrator ruled that the retaliation claim necessarily failed.  In addition, he found defendants had "more than sufficient cause" to demote plaintiff based on documented performance issues and attendance/availability problems.  The supporting evidence included a written review from 2010 and various records from 2011.

Plaintiff had also alleged the existence and breach of an oral contract related to a product line described as ready-to-eat blueberries (the RTE product).  She claimed to have developed the concept and process behind the RTE product and alleged defendants had promised her a revenue sharing arrangement.  The arbitrator described plaintiff's testimony on this subject as "very difficult to follow" and at times contradictory of her prior deposition testimony.  She was also unable to produce supporting documentation for her claims.

4.

Defendants' evidence showed (1) their work on the RTE product began before plaintiff was hired and (2) they had spent over $2 million on research and development to bring the product to market. Based on the strength of defendants' evidence and the weakness of plaintiff's case, the arbitrator concluded plaintiff's claims were unfounded. As an independent ground for ruling in favor of defendants, the arbitrator found plaintiff had entered into a binding written agreement relinquishing her rights in anything created while working for defendants.

The parties filed competing petitions with regard to the arbitration award. Defendants petitioned to have the award confirmed. Plaintiff sought to have the award vacated based on the arbitrator's actual or apparent bias against her. Plaintiff also moved to tax defendants' cost bill. The arguments made in support of plaintiff's petition and motion are detailed under separate headings in our Discussion, *post*.

The trial court ruled in favor of defendants. The motion to tax costs was partially granted and partially denied by the arbitrator. On April 12, 2018, the trial court entered a judgment confirming the arbitration award, including defendants' entitlement to costs in the amount of $27,816.94. On May 23, 2018, plaintiff filed a timely notice of appeal.

## DISCUSSION

### I. Denial of Petition to Vacate the Arbitration Award

Plaintiff claims that three incidents established the appearance of bias on the part of the arbitrator. Some of the facts surrounding the incidents were disputed, and the trial court made express and implied findings on those issues. Pursuant to those determinations, the trial court found the evidence "[did] not clearly establish that a reasonable person under the circumstances would believe that the arbitrator was biased." For the following reasons, we conclude the petition was properly denied.

## A. Standard of Review

The Code of Civil Procedure[2] restricts judicial review of an arbitration award. (*Oaktree Capital Management*, *L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 68.) Confirmation of the award is mandatory unless a party can establish grounds for vacatur under section 1286.2 or correction under section 1286.6. "Upon a petition seeking any of those results, the court *must confirm* the award, *unless* it either vacates or corrects it." (*Louise Gardens of Encino Homeowners' Assn.*, *Inc. v. Truck Ins. Exchange*, *Inc.* (2000) 82 Cal.App.4th 648, 658.)

Under section 1286.2, subdivision (a)(6)(B), an award must be vacated if the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." Section 1281.91 cross-references section 170.1, effectively incorporating the disqualification rules applicable to judges. (§ 1281.91, subd. (d).) Therefore, an arbitrator is subject to disqualification on grounds of actual or apparent bias. (See § 170.1, subd. (a)(6)(A)(iii) & (B).)

"The test for bias is whether an impression of possible bias exists." (*Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1507.) In other words, whether "[a] person aware of the facts might reasonably entertain a doubt" regarding the arbitrator's ability to be impartial. (§ 170.1, subd. (a)(6)(A)(iii); accord, *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385–386.) It is an objective test, meaning the facts are considered from the perspective of a "hypothetical, reasonable person." (*Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 504.)

The parties are in disagreement over the standard of review on appeal. "To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Malek v. Blue Cross of*

---

[2]All undesignated statutory references are to the Code of Civil Procedure.

*California* (2004) 121 Cal.App.4th 44, 55–56.) Therefore, the trial court's findings with regard to what happened during the underlying incidents are entitled to deference. However, we apply de novo review to the question of whether those facts are objectively indicative of bias. (See *Haworth v. Superior Court*, *supra*, 50 Cal.4th at p. 386 [a trial court "is in no better position than an appellate court to resolve the question of whether a reasonable person would doubt the arbitrator's ability to be impartial"].)

### B.     Incident #1

#### 1.     Background

The law firm of Thomas Anton & Associates has represented plaintiff at all stages of this case. An attorney named Becky Brooks served as lead counsel during the arbitration. Attorney Thomas Anton was also involved in the matter and participated in the proceedings.

Robert Verloop was the first witness to testify at the arbitration hearing. Verloop previously worked for a company that was involved in marketing defendants' RTE product. Plaintiff's counsel subpoenaed Verloop to testify in their case-in-chief.

Plaintiff's attorneys were reportedly caught off guard by some of Verloop's testimony. Whatever the reason, attorney Anton became agitated while conducting a redirect examination of the witness. According to a sworn declaration by the arbitrator, Anton "began arguing with the witness and raising his voice. At one point he made a comment to the Arbitrator in front of this witness that the witness had 'lied.'" In a separate, unsworn statement, the arbitrator said, "Things got contentious at that point and [Anton's] voice was very loud and he called the witness a liar and things spun out of control."[3] Verloop described these events the same way in his own declaration, as did opposing counsel.

---

[3]This statement was made during the hearing on plaintiff's motion to disqualify the arbitrator. The judge who heard and denied the motion was not the same judge who heard and denied the petition to vacate the arbitration award.

Verloop had parked his car at plaintiff's counsel's office and gotten a ride to the hearing with plaintiff and attorney Brooks. Due to the heated exchange with attorney Anton, Verloop decided to walk back to his car alone. When he reached the parking lot, Anton and plaintiff were standing approximately 20 feet away from his vehicle. Verloop allegedly heard Anton "speaking in a very loud manner … knowing full well that [Verloop was present]." He claimed Anton was using profanity and making remarks about somebody being a liar. In Verloop's mind, Anton "was voicing his displeasure about [his] testimony, aggressively calling [him] a liar and attempting to intimidate [him]."

Verloop reported the incident to defense counsel, and defense counsel relayed the information to the arbitrator the next morning. The arbitrator's declaration describes what happened next:

> "I asked Ms. Brooks if this had happened and I received a non-answer response. I do not recall the exact words, but she did not deny this had occurred. I admonished both sides that no one was allowed to intimidate or be rude to any witnesses. I admonished all sides that they are to treat each other and all witnesses politely and professionally. I stated that each side can vigorously and strenuously argue their side of the case without being rude or unprofessional."

Anton was not present when the arbitrator gave the admonition. However, the arbitrator claimed to have "restated [his] admonition when Mr. Anton joined the arbitration later in the day." Anton subsequently produced written declarations to refute Verloop's contentions. The arbitrator declined to consider the declarations, telling the parties something to the effect of, "As far as I am concerned, this issue [is] over and behind us." The arbitrator's declaration states: "I never made a determination of whether or not [the alleged incident outside of Anton's office] occurred. My objective was to prevent this type of behavior in the future."

Plaintiff claimed the arbitrator did more than issue a general admonition regarding proper decorum. In a declaration filed with her disqualification motion, plaintiff wrote:

8.

"[T]he Arbitrator told me in front of everyone present at the hearing that Mr. Anton hurt my case by his questions [to Verloop on redirect examination]." The arbitrator generally denied this allegation. His declaration states, in relevant part:

> "I made all of my comments to all of the parties and to all counsel present. Mr. Anton cannot argue that I made my comments to Ms. Brooks and that in some way was not fair, since he chose not to be at all of the hearing. What I communicated to all sides and parties and counsel, is that being rude, argumentative and unprofessional did not help their side of the case."

The arbitrator further explained how Anton's conduct during Verloop's testimony was part of a pattern of histrionic behavior. Earlier that day, Anton had threatened to have defendant Munger arrested. This happened in connection with plaintiff's unopposed motion "to have no record made of [the arbitration hearing], whether electronically or by video." Despite the arbitrator's granting of the motion, Anton "threatened to call the police and have [Munger] arrested if he recorded the proceeding." The arbitrator told Anton "that the threat was not needed and that [his] order was in place."

Before the proceedings had even commenced, the arbitrator warned the attorneys that "argumentative rhetoric" "doesn't serve your clients well." That admonition was precipitated by an e-mail Anton had sent to the arbitrator and opposing counsel regarding defendants' arbitration brief. The arbitrator attached a copy of the e-mail to his declaration and accurately summarized its contents. He described the tone of Anton's correspondence as "very aggressive," noting Anton had characterized defendants' brief as a "dirty attorney trick," grumbled that his office had been "sandbagged," and further complained of a "trial by ambush."

At the hearing on plaintiff's vacatur petition, the trial court provided a verbal tentative ruling, which it later adopted in full. With regard to the admonition given the day after Verloop's testimony, the trial court found the arbitrator had warned "all parties to refrain from certain actions and conduct towards any witness." As for the context in

which the arbitrator's statements were made, the trial court said, "It seems to me to be an appropriate response to what the arbitrator perceived had occurred."

It is difficult to summarize the findings concerning plaintiff's allegation that the arbitrator told her Anton's behavior had "hurt" her case. The reporter's transcript reads as follows:

> "With respect to the open admonitions towards plaintiff that her attorney's questions for a witness were harmful to her case, first, it was unclear from [plaintiff's] declaration—which is the only support for that claim [—] of who was present when that statement was made, does not state whether or not Attorney Brooks was there. If so, then plaintiff was represented at that time of the hearing. Third, it does not state the context in which the alleged statements were made by the arbitrator, so it cannot be determined from plaintiff's evidence that the statements by the arbitrator the day following was referring—whether or not it was referring to Mr. Anton's statements the day before."

### 2.     *Analysis*

According to plaintiff, the admonition given to the parties and their counsel suggested that the arbitrator believed Verloop's allegations against Anton. Based on the arbitrator's unwillingness to review Anton's declarations and consider his side of the story, plaintiff claims the arbitrator showed "favoritism" toward defendants and bias against her. She further contends the alleged remark that Anton's behavior "hurt" her case showed the arbitrator "had already formed an opinion about her case based upon the conduct of her attorney." We are not persuaded by these arguments.

"Courts must apply with restraint statutes authorizing disqualification of a judge [or arbitrator] due to bias," and allegations regarding the impression of bias "must clearly be established." (*In re Scott* (2003) 29 Cal.4th 783, 817.) "Neither strained relations between a judge and an attorney for a party nor '[e]xpressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are … evidence of bias or prejudice. [Citation.]' [Citation]." (*Roitz v. Coldwell Banker Residential Brokerage Co*. (1998) 62 Cal.App.4th 716, 724.)

10.

Substantial evidence supports the trial court's finding as to the nature of the admonishment. Supporting evidence includes the arbitrator's declaration, wherein he claimed to have "admonished all sides that they [were] to treat each other and all witnesses politely and professionally." Consistent with the California authorities cited above, the United States Supreme Court has said "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." (*Liteky v. United States* (1994) 510 U.S. 540, 555.) Therefore, "ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—" do not establish grounds for disqualification. (*Id*. at p. 556.) We conclude that a disinterested observer aware of the facts surrounding the admonition could not "reasonably entertain a doubt" regarding the arbitrator's ability to be impartial. (§ 170.1, subd. (a)(6)(A)(iii).)

As for the alleged statement that Anton's behavior "hurt" plaintiff's case, the trial court's express findings are ambiguous. However, the judgment is presumed correct, all reasonable inferences are indulged to support it, and all ambiguities are resolved in favor of its affirmance. (*Winograd v. American Broadcasting Co*. (1998) 68 Cal.App.4th 624, 631.) "'Any uncertainty in the findings will be construed so as to support the judgment rather than to defeat it.'" (*Richter v. Walker* (1951) 36 Cal.2d 634, 639.)

The trial court used the phrase "alleged statements" and noted plaintiff's declaration was the only evidence supporting her version of the events. It is apparent plaintiff's evidence was viewed as inconclusive. Construing the record in the light most favorable to the judgment, we conclude the trial court impliedly found the "hurt [your] case" allegation was not proven. The implied finding is supported by substantial evidence, including the declarations of the arbitrator and defense counsel.

As previously noted, the arbitrator said he made "all of [his] comments to all of the parties and to all counsel present," and "[w]hat [he] communicated to all sides and

11.

parties and counsel, [was] that being rude, argumentative and unprofessional did not help their side of the case." Defense counsel attested that the arbitrator "admonished all parties to refrain from emotional and inappropriate conduct during and outside of the arbitration hearing. He did not single out the Plaintiff during these discussions, but rather, stated 'all parties' must do so."

## C.    Incident #2

### 1.    *Background*

Another witness called during plaintiff's case-in-chief was defendants' former accountant/bookkeeper. According to a sworn declaration by defense counsel, this witness's testimony was offered "solely for the purpose of laying the foundation that [one or more of the business entity defendants] paid all of [defendant] Munger's credit card bills that were submitted." Defendants stipulated to the authenticity of the related documents, so the testimony was brief. The arbitrator's declaration states that "[h]e was a 10–15 minute witness." Plaintiff does not dispute these facts, but she notes the testimony was relevant to her theory that someone other than Munger could have used his credit card at restaurant #3 on the night of the alleged sexual assault.

During a break in the proceedings, after the witness had been excused, defense counsel told the arbitrator that the witness had previously attempted suicide. Attorney Brooks was present for at least part of this conversation, and she complained defense counsel was improperly attempting to impeach the witness. In her own declaration, Brooks alleged defense counsel had also accused the witness of "hack[ing] Microsoft codes."

Neither the arbitrator nor defense counsel mentioned anything about hacking in their declarations.[4] The arbitrator explained: "[Defense counsel] said something about a

---

[4]At the hearing on the motion to disqualify, the arbitrator said he did not recall hearing any statements about hacking. However, as previously explained, the judge who heard that

12.

previous witness who had attempted suicide by shooting himself in the stomach. This was a conversation that began with Ms. Brooks in the room and lasted less than 5 seconds. I took it as a sad human-interest story. It had nothing to do with the substance or credibility of this witness."

The trial court found "all that was established was that defendants' counsel made a comment about the witness attempting suicide." It further concluded there was "no evidence" the incident "had any effect on the arbitrator."

### 2. *Analysis*

In her briefing, plaintiff argues "news that [the witness] hacked computer codes, then tried to shoot himself after being accused of the crime would go directly toward his credibility as someone who committed criminal fraud or embezzlement involving those financial records." However, the trial court found "all that was established was that defendants' counsel made a comment about the witness attempting suicide." This necessarily implies a finding that the arbitrator did not hear any allegations of prior misconduct.

"We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.) The relevant findings are supported by the declarations of the arbitrator and defense counsel. (See Evid. Code, § 411; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [the testimony of a single witness may constitute substantial evidence].) We conclude that a person aware of the facts, i.e., the arbitrator being told defendants' former bookkeeper had attempted suicide, could not reasonably doubt the arbitrator's

motion was not the same judge who heard and ruled upon the petition to vacate the arbitration award.

13.

ability to be impartial based on his receipt of that information. (See *Haworth v. Superior Court*, *supra*, 50 Cal.4th at p. 389 ["'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer."' [Citation.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.'"].)

## D. Incident #3

### 1. Background

Plaintiff alleged that, while she was being examined by attorney Brooks, she "saw the Arbitrator lift his head and roll his eyes at her questioning." Brooks did not see this occur. Defense counsel may have observed the incident, but he interpreted it differently. Counsel explained: "I am unaware of [the arbitrator] rolling his eyes at any witnesses. I observed him during the proceeding pulling his glasses up over his head and leaning back and looking to the sky as if he was thinking during the testimony of a witness. I did not perceive this to be an eye rolling gesture, but rather someone contemplating the testimony he had just heard."

The arbitrator was unable to confirm or deny the allegation. His declaration states, in relevant part: "I do not recall doing that, but I cannot deny it either. However, as the trier of fact I have the right to believe or not believe testimony rendered. Since I do not recall this incident, I can't respond to it further."

The trial court ruled as follows: "[Plaintiff's declaration] is the only evidence that would support that claim. First, she does not state the context in which this occurred. She only stated it happened once, and the only claim she makes is that it was distracting her. There was never any evidence that it displayed any open hostility towards her or her attorneys."

14.

### 2. *Analysis*

Plaintiff's briefing claims the arbitrator rolled his eyes "while she was testifying about the assault." Corresponding record citations direct us to plaintiff's sworn declaration, but her allegation therein was that the arbitrator rolled his eyes at attorney Brooks's "*questioning*." (Italics added.) Such conduct does not create the impression of bias. (See *People v. Snow* (2003) 30 Cal.4th 43, 79 ["the court's occasional impatience with repetitive or vague foundational questions did not convey a judicial bias against the defense"]; *People v. Carpenter* (1997) 15 Cal.4th 312, 353 [judge's showing of "irritation with counsel's voir dire questioning" fell "far short" of establishing bias]; *People v. Heck* (1954) 122 Cal.App.2d 484, 489 ["trial court expressed impatience at the number of preliminary questions asked the witness, saying, 'Why is that material? Get at the meat of it and don't waste so much time with the preliminary questions.'"]; cf. *Roitz v. Coldwell Banker Residential Brokerage Co.*, *supra*, 62 Cal.App.4th at p. 725 [arbitrator's comments "made out of frustration" with defense counsel did not create impression of bias].)

The claim would fail even if plaintiff could prove her revised allegation. "[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. It is his duty to consider and pass upon the evidence produced before him, and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party." (*Kreling v. Superior Court* (1944) 25 Cal.2d 305, 312; accord, *People v. Guerra* (2006) 37 Cal.4th 1067, 1111 ["Mere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias"].)

## II. Partial Denial of Motion to Tax Costs

### A. Standard of Review

Section 1032 provides for the recovery of costs by the prevailing party in any action or proceeding. If the items in the prevailing party's cost memorandum appear to be proper, the verified memorandum is prima facie evidence that the expenses were necessarily incurred. (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1266.) A party moving to tax costs has the burden of showing the expenses were unreasonable or unnecessary. (*Ibid.*; see § 1033.5, subd. (c)(2) ["Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation"].)

An order granting or denying a motion to tax costs is reviewed for abuse of discretion. (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52.) "To the extent the statute grants the court discretion in allowing or denying costs or in determining amounts, we reverse only if there has been a '"clear abuse of discretion" and a "miscarriage of justice."'" (*Ibid.*) It is the appellant's burden to "affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685.)

### B. Claims and Analysis

#### 1. Filing Fees

Defendants were awarded $4,507.94 in costs for filing and motion fees. The amounts claimed in this category were supported by the sworn declaration of defense counsel's accountant and approximately 10 pages of documentation. As best we can tell from plaintiff's cursory briefing of this issue, she is arguing defendants cannot recover costs associated with payments to third party litigation support companies in connection with the various filings.

16.

Pursuant to section 1033.5, subdivision (a)(1), filing and motion fees are recoverable cost items. "Messenger fees are not expressly authorized by statute, but may be allowed in the discretion of the court." (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 132.) Defense counsel's law office is in Fresno, and the trial court is located in Bakersfield, so counsel's hiring of litigation support companies to accomplish the filing of motions and other items is not facially unreasonable or unnecessary. Plaintiff fails to show grounds for reversal.

### 2. Deposition Costs

Defendants were awarded $14,220.57 in deposition costs, including videographer expenses. Plaintiff makes the following argument: "Plaintiff did not obtain copies of all of the depositions and videos in the case so does not have all of the invoices. However, Plaintiff paid $1,062.25 for transcripts of two of defendants' depositions. [Record citation.] Based upon those charges and the per-page charge set forth in the invoice, Defendants should not have incurred more than $8,348.25 in costs for deposition transcripts."

A prevailing party may recover costs associated with "[t]aking, video recording, and transcribing necessary depositions." (§ 1033.5, subd. (a)(3)(A).) Defendants produced detailed invoices to substantiate their claimed deposition expenses. The arbitrator found "that the depositions and the video of those depositions were essential to the presentation of this case by the defense," and he noted plaintiff "was severely impeached with her deposition testimony by video …." Plaintiff has not demonstrated an abuse of discretion with respect to the award of deposition costs.

### 3. Exhibit Costs

Defendants were awarded $2,460.05 in costs associated with four "trial binders" of exhibits used by the arbitrator, plaintiff's counsel, defense counsel, and the witnesses who testified. Such costs are recoverable if the materials "were reasonably helpful to aid

the trier of fact." (§ 1033.5, subd. (a)(13); see *Chaaban v. Wet Seal*, *Inc.*, *supra*, 203 Cal.App.4th at p. 59 [defendant paid for "trial binders" containing copies of exhibits that were used by "counsel (for both sides), the witnesses, and the judge"; "The court properly exercised its discretion in allowing these costs as helpful to aid the trier of fact"].) Plaintiff argues (1) the recoverable costs were those associated with making one binder for the arbitrator and (2) any costs in excess of $176.25 were unreasonable. As she provides no authority for her position, we conclude plaintiff has failed to affirmatively demonstrate reversible error.

### 4. Travel Expenses

Defendants were awarded $6,628.38 in costs associated with travel from Fresno to Bakersfield to attend depositions. This figure included mileage reimbursement, rental car fees, and hotel expenses. Such costs are recoverable. (§ 1033.5, subd. (a)(3)(C); *Chaaban v. Wet Seal*, *Inc.*, *supra*, 203 Cal.App.4th at p. 59.) Defendants provided supporting documentation, and the arbitrator found (1) "the defense actually incurred the amounts claimed" and (2) "the amounts claimed [were] reasonable and necessary."

Plaintiff appears to argue that defendants' award should be limited to mileage reimbursement because the sum of their travel expenses was listed under the heading of "mileage" in the memorandum of costs. Plaintiff again fails to support her argument with legal authority and has not demonstrated grounds for reversal.

### DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.